IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRANSATLANTIC REINSURANCE CO., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.: _____ |
| | ) | |
| NATIONAL INDEMNITY CO., | ) | |
| | ) | |
| Respondent. | ) | |

**PETITION TO COMPEL ARBITRATION**

Petitioner Transatlantic Reinsurance Company ("Transatlantic") hereby petitions this Court, pursuant to 9 U.S.C. §4, for an Order compelling Respondent National Indemnity Company ("NICO") to arbitrate a dispute arising under a Blanket Casualty Excess of Loss Reinsurance Agreement (the "Reinsurance Agreement") originally effective January 1, 1985, in accordance with the terms of an arbitration agreement contained therein. In support of this Petition, Transatlantic states as follows:

**The Parties**

1. Petitioner Transatlantic is a corporation incorporated and existing under the laws of the State of New York, and has its principal place of business at 80 Pine Street, New York, New York.

2. Respondent NICO is a corporation incorporated and existing under the laws of the State of Nebraska, with its principal place of business at 3024 Harney Street, Omaha, Nebraska.

**Jurisdiction and Venue**

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this is a dispute between citizens of different states, and the amount in controversy exceeds $75,000.

4. The Court has personal jurisdiction over NICO because NICO is licensed to write general insurance business in the State of Illinois and, on information and belief, does business in Illinois through an office located at One South Dearborn Street, Chicago, Illinois.

5. Venue in this District is proper pursuant to 9 U.S.C. §4.

**Statement of Facts**

6. Transatlantic originally entered into the Reinsurance Agreement with the Continental Insurance Company ("Continental") effective as of January 1, 1985. The Reinsurance Agreement provides in substance that Transatlantic will indemnify Continental, including any company that may become affiliated with, controlled by or under common management with Continental, in respect of the net excess liability which may accrue to Continental under policies, bonds, binders, contracts of insurance or reinsurance, coinsurance or counderwriting, whether oral or written, or other evidences of liability classified as Primary Casualty Business, Broad Form or Umbrella Liability, and all other Excess Third Party Liability Insurance Business (except Directors and Officers Liability Insurance), subject to all of the terms and conditions of the Reinsurance Agreement. A true and correct copy of the Reinsurance Agreement is filed simultaneously and incorporated herein as Exhibit A to this Petition.

7. Article XXII of the Reinsurance Agreement contains an arbitration provision requiring Continental and Transatlantic, as a condition precedent to any right of action, to submit any dispute with reference to the interpretation of the Reinsurance Agreement, or their rights

with respect to any transaction involved, for decision by a panel of arbitrators, upon the written request of either party. Article XXII further provides that the arbitration shall take place in the city where Continental's head office is located, which is Chicago, Illinois.

8. Beginning on or about July 14, 2010, Continental entered into a series of agreements commencing with a Master Transaction Agreement dated July 14, 2010, and also including an Administrative Service Agreement, a Trust Agreement, a Parental Guarantee Agreement, and a Loss Portfolio Transfer Agreement, all dated August 31, 2010 (collectively, the "LPT Agreements"). This series of integrated agreements is collectively referred to as a Loss Portfolio Transfer transaction ("LPT"). Copies of the LPT Agreements are filed simultaneously and incorporated herein as Exhibit B to this Petition.

9. Though the vehicle of the LPT, NICO assumed the ultimate economic responsibility for a portfolio of legacy asbestos and environmental liabilities incurred under numerous primary, excess and umbrella liability policies issued by Continental to various policyholders throughout the United States. Under the terms of the LPT Agreements, NICO assumed all rights and obligations of Continental with respect to the handling and resolution of the subject portfolio of asbestos and environmental claims. In turn, Continental assigned to NICO all rights with respect to any reinsurance that Continental might have for the assumed liabilities, including the right to pursue reinsurance recoveries through litigation and arbitration under contracts such as the Reinsurance Agreement.

10. On March 14, 2013, Continental, acting through counsel, demanded arbitration against Transatlantic under the Reinsurance Agreement, seeking to recover reinsurance for amounts that Continental has allegedly paid to certain policyholders, or has become legally obligated to pay, under certain policies, for asbestos or environmental claims. Transatlantic has

denied that it is liable for the amounts claimed under the Reinsurance Agreement. An arbitration panel was selected pursuant to Article XXII of the Reinsurance Agreement, and an organizational meeting was held in the arbitration on October 29, 2013. At the organizational meeting, Continental was represented by counsel who, on information and belief, was retained by NICO, and by an employee of a corporate affiliate of NICO's who was present by telephone link. No employee of Continental appeared at the organizational meeting. Since the date of the organizational meeting, no other proceedings have been held in the arbitration, and no substantive rulings have been made by the arbitration panel. It has become apparent, however, that the interests being represented by the Petitioner in the arbitration are NICO's, not Continental's

11. One of Transatlantic's grounds for disclaiming liability for the sums claimed by Continental is that pursuant to Article IX of the Reinsurance Agreement (the "Net Retained Lines" clause), the Reinsurance Agreement only applies to that portion of the underlying insurance obligations which Continental retains net for its own account. By reason of its entry into the LPT, Continental has transferred to NICO all of its insurance obligations under the policies at issue for asbestos and environmental claims, and has not retained any of those underlying liabilities net for its own account. As such, it is Transatlantic's position that Continental is not entitled to recover under the Reinsurance Agreement any amounts for liabilities which were transferred to NICO.

12. One of the integrated series of LPT Agreements between Continental and NICO, the Administrative Services Agreement ("ASA"), provides for the administration of "Third Party Reinsurance Agreements," as that term is defined therein. Under the terms of the ASA, the Reinsurance Agreement is one of the Third Party Reinsurance Agreements which NICO has

agreed and is contractually obligated to administer. Under the express terms of the ASA, NICO agreed to "administer and collect . . . in the name of [Continental], Third Party Reinsurance Recoverables and Other Recoveries due in respect of the Reinsured Liabilities *in accordance with the contractual terms of the applicable Third Party Reinsurance Agreements . . .*" (emphasis added).

13. Similarly, Article II of the LPT Reinsurance Agreement, another one of the integrated series of LPT Agreements, states that NICO "*shall be subject in all respects to the same risks, terms, rates, conditions, interpretations, assessments and waivers . . . as are contained in the Third Party Reinsurance Agreements between [Continental] and any of its reinsurers*" (emphasis added).

14. The provisions of the LPT Agreements, taken as a whole, establish that NICO, not Continental, is the true beneficiary of reinsurance recovery actions such as the pending arbitration, because under the LPT Agreements any recovery obtained will be paid for the benefit of NICO, not Continental. As such, NICO is the real party in interest in the pending arbitration.

15. Moreover, the provisions of the LPT Agreements, including the provisions set forth in paragraphs 12 and 13 above, establish NICO's contractual obligation to administer the Reinsurance Agreement in accordance with all of the Reinsurance Agreement's provisions, including the mandatory arbitration provisions set forth in Article XXII.

16. Under federal arbitration law, a separate contractual relationship with the signatory to an arbitration agreement is sufficient to bind a non-party to the agreement where the separate contract incorporates the existing arbitration provision. By its entry into the LPT Agreements, therefore, NICO is bound by the arbitration provisions of the Agreement.

17. NICO is also bound to the arbitration provisions of the Agreement under principles of equitable estoppel, because it knowingly seeks the benefit of the contract containing the arbitration provisions.

18. The Arbitration provision in the Reinsurance Agreement (Article XXII) is sufficiently broad to allow disputes with non-signatories to be brought within its terms, including the dispute that is the subject of the pending arbitration proceeding.

19. Transatlantic has repeatedly asked counsel in the pending arbitration whether NICO would agree to be bound by the interim rulings of the arbitration panel and the eventual final award that will be entered by the panel, but counsel has refused to provide any such assurances on behalf of NICO. On February 27, 2014, the undersigned counsel made a written demand upon NICO, through opposing counsel in the pending arbitration, for NICO to become a party to the arbitration proceeding. A copy of this demand is attached as Exhibit C. NICO, by letter dated March 3, 2014, attached as Exhibit D, rejected Transatlantic's demand.

## Count I
### (Compelling Arbitration, 9 U.S.C. §4)

20. Transatlantic repeats and realleges Paragraphs 1 through 19 of this Petition as though fully set forth herein.

21. Section 4 of the Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

{00070557.DOC} 6

22. NICO is a party required to arbitrate the dispute between and among itself Transatlantic and Continental under well-settled federal law.

23. The dispute between and among NICO, Transatlantic and Continental is within the scope of the arbitration provision set forth in the Reinsurance Agreement.

24. Transatlantic is aggrieved by NICO's failure and refusal to arbitrate.

25. The issue of whether NICO is required to arbitrate is a gateway issue that is for the Court, not the arbitration panel, to decide.

WHEREFORE, Petitioner Transatlantic Reinsurance Company respectfully requests that this Court:

(a) order that NICO be compelled to participate as a party to the pending arbitration;

(b) order that NICO be identified as a Petitioner, in addition to Continental, in said arbitration to the extent it seeks to benefit from the interim orders and final award of the arbitration panel;

(c) order NICO to pay Transatlantic's costs relating to this action; and

(d) order such other and further relief as this Court deems just and proper.

Dated: March 4, 2014

                                         Respectfully submitted,

                                         TRANSATLANTIC REINSURANCE CO.


                                         By: /s/ Mark A. Kreger
                                                 One of Its Attorneys


Mark A. Kreger
Scott A. Hanfling
Emily E. LeVert
Kerns, Frost & Pearlman, LLC
30 West Monroe
Suite 1600
Chicago, IL 60603
(312) 261-4550

*Attorneys for Transatlantic Reinsurance Company*