IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRANSATLANTIC REINSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 1535 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| NATIONAL INDEMNITY CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Transatlantic Reinsurance Company ("TRC") has brought an amended petition under the Federal Arbitration Act, 9 U.S.C. § 4, seeking to compel defendant National Indemnity Company ("NICO") to join in an ongoing arbitration between Continental Insurance Company ("Continental") and TRC. For the reasons discussed below, TRC's motion to compel NICO to be added as a party to the arbitration is denied.

## BACKGROUND

Continental, an insurance company, and TRC, a reinsurance company, originally entered into a blanket casualty excess of loss reinsurance agreement (the "Reinsurance Agreement") effective January 1, 1985, providing that TRC would indemnify Continental with respect to net excess liability accrued by Continental in a variety of classes of general and specialty casualty insurance business. The Reinsurance Agreement contains a provision providing that "if any dispute shall arise between the COMPANY [Continental] and the REINSURERS [TRC] with reference to the interpretation of this AGREEMENT or their rights with respect to any transaction involved," the dispute shall be submitted to arbitration.

In 2010, Continental entered into two separate transactions with NICO. The first was a "Loss Portfolio Transfer" transaction (the "LPT Agreement"), whereby Continental purchased

reinsurance from NICO for asbestos and environmental risks. According to TRC, Continental transferred its liability to NICO under the LPT Agreement and paid NICO $2 billion. The second transaction was an Administrative Services Agreement (the "ASA Agreement") providing for the administration of "Third Party Reinsurance Agreements" whereby NICO acts as Continental's agent, and is responsible for collecting reinsurance proceeds on behalf of Continental and pursuing reinsurance recoveries on behalf of and in the name of Continental. NICO's services under the ASA are provided by Resolute, a third-party administrator ("TPA") and corporate affiliate of NICO.

In 2012, TRC stopped making payments to Continental under the Reinsurance Agreement for certain classes of business including asbestos- and environmental-related claims. TRC asserted that once Resolute began acting as TPA for Continental, TRC no longer had to indemnify Continental pursuant to the Reinsurance Agreement.[1] In March 2013, Continental commenced arbitration against TRC, seeking payment of all balances due of approximately $136,000 and any amounts accrued through the date of the hearing. Pursuant to the Reinsurance Agreement, a three-arbitrator panel has been constituted and discovery has been ongoing. On February 27, 2014, TRC demanded that NICO join the Continental-TRC Arbitration as a Petitioner. On March 4, 2014, TRC filed the instant lawsuit seeking to compel NICO to arbitrate as a party in the Continental-TRC Arbitration.

## DISCUSSION

---

[1] In 2012, TRC was also acquired by Alleghany Corporation, an investment holding company. Resolute had been acting as TPA for Continental since 2010 when NICO entered into the ASA with Continental. The fact that TRC did not stop payments until 2012 is therefore suspect, indicating that there is another reason for TRC to cease payments to Continental pursuant to the Reinsurance Agreement.

2

A court may compel arbitration when a party has been "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement." 9 U.S.C. § 4. "Notwithstanding the strong federal presumption in favor of arbitrability," Clarendon Nat. Ins. Co. v. Lan, 152 F. Supp. 2d 506, 519 (S.D.N.Y. 2001), "[a]rbitration is contractual by nature, and a party may not be compelled to arbitrate a dispute absent an agreement to do so." Pereira v. Santander Consumer USA, Inc., 2012 WL 4464893 at *1 (N.D. Ill. 2012) (citing Hawkins v. Aid Ass'n for Lutherans, 338 F.3d 801, 807 (7th Cir. 2003) (internal quotation marks omitted)). The Seventh Circuit has, however, recognized "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." Zurich Am. Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005).

TRC first argues that the arbitration clause in the Reinsurance Agreement is sufficiently broad to bind NICO as a non-signatory to its terms. An arbitration clause is sufficiently broad to bind non-parties if it is "not restricted to the signatories in the agreement," Clarendon, 152 F. Supp. 2d at 520, and requires arbitration for matters "arising out of" or "in connection with" the interpretation of the agreement. Gersten v. Intrinsic Technologies, LLP, 442 F. Supp. 2d 573, 577 (N.D. Ill. 2006). Such terms "are so broad that they have often been called 'generic.'" Id. (citing N. Illinois Gas Co. v. Airco, Indus. Gases, a Div. of Airco Inc., 676 F.2d 270, 275 (7th Cir.1982)). Alternatively, "narrow" arbitration provisions "are restricted to the parties specifically identified in the agreement." Clarendon, 152 F. Supp. 2d at 520.

TRC correctly argues that the arbitration clause in the Reinsurance Agreement includes the broad language "any dispute . . . aris[ing]" from the interpretation or rights with respect to

3

any transaction involved, but conveniently ignores the narrow language specifying that the dispute must "arise between the COMPANY and the REINSURERS[.]"[2] The Reinsurance Agreement therefore cannot be construed broadly, because it specifically limits the parties that are required to arbitrate a dispute arising out of the agreement to Continental and TRC. TRC next argues that NICO is nonetheless bound by the Reinsurance Agreement's arbitration clause because, by entering into the LPT Agreements with Continental, it has assumed the Reinsurance Agreement. NICO contends that it entered into a separate transaction with Continental, and did not assume any obligation of Continental under the Reinsurance Agreement. "A non-signatory 'may be bound by an arbitration clause if its subsequent conduct indicates that *it is assuming the obligation to arbitrate*.'" Hospira, Inc. v. Therabel Pharma N.V., 2013 WL 3811488 at *12 (N.D. Ill. 2013) (citing Invista S.A.R.L. v. Rhodia, S.A., 625 F.3d 75, 85 (3d Cir. 2010) (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 777 (2d Cir. 1995)) (emphasis supplied) (internal quotation marks omitted). "To be bound under this theory, a nonsignatory must manifest a clear intent to arbitrate the dispute." Castlewood (US), Inc. v. Nat'l Indem. Co., 2006 WL 3026039 at *5 (S.D.N.Y. 2006) (citing Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105 (2d Cir. 1991) (internal quotation marks omitted); see also In re Arbitration Between Promotora da Navegacion, S.A. v. Sea Containers, Ltd., 131 F.Supp.2d 412, 417 (S.D.N.Y.2000) ("[T]he fundamental question . . . is whether [the nonsignatory] evidenced--expressly or implicitly--an unambiguous intent to arbitrate the submitted dispute."). In Hospira, the court found it significant that the non-signatory "expressly

---

[2] In the definition section of the Reinsurance Agreement, the company is defined as Continental, and the reinsurers is defined as Transatlantic.

objected to arbitration and . . . sought a declaration from th[e] Court that it ha[d] not assumed the Arbitration Clause." Hospira, 2013 WL 3811488 at *12.[3]

In the instant context, NICO entered into a separate transaction with Continental, and it cannot "be said that [NICO] assumed the obligation to arbitrate" under the Reinsurance Agreement. Id. (citing Thomson-CSF, S.A., 64 F.3d at 777). Similar to the nonsignatory in Hospira, NICO denies assuming the obligation to arbitrate, and sought a preliminary injunction to enjoin TRC from taking steps to pursue or commence arbitration.[4] NICO's subsequent conduct thereby seeks to "distance itself from the Arbitration Clause [TRC] contends it has assumed." Id. at 13. Further, nothing in the record indicates that NICO manifested an unambiguous intent, either explicitly or implicitly, to assume the obligation to arbitrate. Accordingly, entering into an agreement "with full knowledge of [Continental's] rights under the Reinsurance Agreement does not constitute an assignment of rights under the Reinsurance Agreement." Id.

TRC next argues that the Reinsurance Agreement has been incorporated by reference into the LPT Agreements between Continental and NICO. "A nonsignatory to an agreement

---

[3] The court in Hospira further distinguished between a merger where the signatory dissolves after it merged with its legal successor, and a signatory that survives the merger. See Hospira, 2013 WL 3811488 at *12. In the first scenario, the legal successor could be said to have assumed the obligation to arbitrate; the same cannot be said of the latter, however, where the successor "maintain[s] its separate legal identity as a subsidiary." Id. Although the surviving corporation in Hospira retained all debts, liabilities, and duties, Id., the distinction between a merger and a successor is significant. Accordingly, because NICO and Continental remain separate entities, the court finds that NICO is not bound by the arbitration clause by the doctrine of assumption.

[4] NICO sued TRC in the District Court of Nebraska seeking a preliminary injunction ordering TRC to refrain from taking steps to pursue or commence arbitration against it. The Nebraska action was dismissed without prejudice.

containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporates the existing arbitration clause." Clarendon, 152 F. Supp. at 520. "The contract must show an intent to incorporate the other document and make it part of the contract itself." Turner Constr. Co. v. Midwest Curtainwalls, Inc., 543 N.E. 2d 249, 251 (1989).

Nevertheless, "[m]ere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate . . ." Rosenblum v. Travelbyus.com Ltd., 299 F.3d 657, 666 (7th Cir. 2002). Generally, separate agreements containing explicit language, such as "Subject to [the agreement], which included an arbitration provision," Clarendon, 152 F. Supp. 2d at 520 (citing Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuala, 991 F.2d 42, 46 (2d Cir. 1993)), or a "direct and unambiguous assignment" transferring all rights and benefits under a separate agreement containing an arbitration clause, are sufficient to show an incorporation by reference. See Cedrela Transport Ltd. V. Banque Cantonale Vaudoise, 67 F. Supp. 2d 353, 353 (S.D.N.Y. 1999); Certain Underwriters at Lloyd's London v. Colonia Penn Ins. Co., 1997 WL 316459 at *1 (S.D.N.Y. 1997). A subsequent agreement may even contain a specific incorporation provision, such as "all terms and provisions of the [agreement containing an arbitration provision] shall be applied to this agreement as if contained herein . . ." Century Indemnity Co. v. Certain Underwriters at Lloyds, 584 F.3d 513, 550 (3d Cir. 2009).

Contrary to TRC's argument, the language in the LPT and ASA Agreements is not sufficiently explicit and specific to incorporate by reference the arbitration provision of the Reinsurance Agreement. When faced with an agreement containing similar language to the ASA

6

Agreement, the court in Castlewood held that a contract ensuring the nonsignatory "will not do anything that will cause [the signatory] to breach the Reinsurance Agreements" was not sufficient to recognize an assignment of benefits. Castlewood, 2006 WL 3026039 at *6. Similarly, if NICO does anything that will cause Continental to breach the Reinsurance Agreement, Continental has a right to seek relief against NICO pursuant to the LPT and ASA Agreements. See id. The only language containing any reference to the Reinsurance Agreements is that NICO agrees to provide its reinsurance collection services to Continental "in accordance with the contractual terms of the applicable Third Party Reinsurance Agreements."[5] As previously held in Castlewood, this language, alone, is not sufficient to constitute an assignment of rights under the Reinsurance Agreement.

TRC also argues that because NICO is seeking a direct benefit from the Reinsurance Agreement, it is estopped from disclaiming its obligation to arbitrate. NICO contends that estoppel does not apply because it has not asserted any rights of its own for its direct benefit under the Reinsurance Agreement. "Estoppel bars a party who claims the direct benefit *of a contract* from asserting that [it] is not bound by the arbitration clause contained in that contract." Pereira, 2012 WL 4464893 at *1 (emphasis in original) (citing Zurich, 417 F.3d at 688). The purpose of the doctrine of estoppel is therefore to "prevent a party from having it both ways." Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc., 2007 WL 951943 at *5 (N.D. Ill. 2007). "The touchstone of this form of estoppel thus is whether the non-signatory has brought

---

[5] TRC conflates the terms "in accordance with" and "according to." The distinction is important, because the latter signifies an incorporation by reference, see Clarendon, 152 F. Supp. 2d at 511, while the former refers to conduct that does not cause the signatory to breach its obligations under the original agreement, which, as held in Castlewood, is insufficient to incorporate the Reinsurance Agreement by reference.

7

suit against the signatory premised upon the agreement that contains the arbitration clause at issue, thus seeking the agreement's direct benefits." Gersten, 442 F. Supp. 2d at 579.

TRC relies on Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins.Co., 857 F. Supp. 2d 404, 414 (S.D.N.Y. 2012), to argue that because NICO received a direct benefit from the separate Reinsurance Agreement containing an arbitration clause, NICO should be estopped from claiming it is not bound by the provisions of the Reinsurance Agreement. TRC contends that NICO is benefitting directly from the investment "float" it generates from the LPT Agreement to maximize its own investment returns. For estoppel to apply, however, the benefits received "must be direct- which is to say, flowing directly from the agreement" that contains the arbitration clause. Oppenheimer & Co. Inc. v. Deutsche Bank AG, 2010 WL 743915 at *2 (S.D.N.Y. 2010) (citing MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d Cir. 2001)) (internal quotation marks omitted). To prevail under an estoppel theory, TRC must therefore show that NICO "knowingly exploited the . . . contract and thereby received a direct benefit from the contract." MAG Portfolio, 268 F.3d at 61 (citing Thomson-CSF, 64 F.3d at 778) (internal quotation marks omitted). The only agreement with an arbitration provision is the Reinsurance Agreement. What NICO does with the "float" it may recover pursuant to the LPT Agreement is irrelevant to the issue of whether NICO should be compelled to arbitrate a dispute arising under the Reinsurance Agreement.

Nor is NICO is seeking to enforce one provision of the Reinsurance Agreement while simultaneously refusing to arbitrate. See Pereira, 2012 WL 4464893 at *1. "[A]ny benefits gained by [NICO] arise only indirectly, by virtue of the separate [LPT and ASA] Agreements with [Continental], and not directly from the Reinsurance Agreement." Castlewoord, 2006 WL

3026039 at *7. "[I]t is not enough merely that the claims at issue have some logical nexus to the agreement, or that [a nonsignatory] seeks a result that indirectly relates to or benefits from the existence of the agreement." Gersten, 442 F. Supp. 2d at 579. Because NICO's benefit is only indirectly related to the Reinsurance Agreement, NICO is not estopped from refusing to arbitrate.

## CONCLUSION

For the foregoing reasons, TRC's amended petition to compel arbitration is denied.[6]

**ENTER:**     **June 26, 2014**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[6] To the extent that TRC argues NICO is a necessary party to the arbitration, it cites no authority to support its assertion. Further, because TRC can obtain complete relief with respect to the Reinsurance Agreement in NICO's absence, see Fed. R. Civ. P. 19 (a)(1)(A), TRC has not been "aggrieved" by NICO's refusal to arbitrate.

9